## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Payward Interactive, Inc. and Payward Trading,    :
Ltd., d/b/a Kraken,

               Plaintiffs,              :

      v.                 :

Etana Custody Limited, Etana Custody, Inc.,    :
Dion Brandon Russell and Alexander Luton,
                                   :

               Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

### COMPLAINT AND JURY DEMAND

---

Plaintiff Payward Interactive, Inc. ("PWI") and Plaintiff Payward Trading, Ltd. ("PTL"), d/b/a Kraken, (together, "Kraken"), respectfully submit their Complaint and Jury Demand against Defendants Etana Custody, Inc., Etana Custody Limited (together, "Etana Custody"), Dion Brandon Russell, and Alexander Luton, and allege as follows:

### PRELIMINARY STATEMENT

1.      Kraken is one of the largest, safest, and most popular digital asset exchanges in the world. As part of its commitment to client service, Kraken partners with various custodial account providers to offer its customers the ability to fund their Kraken accounts with various fiat currencies and to make near-instant transfers into the Kraken ecosystem around the clock.

1

2.      One of Kraken's custodial partners was Etana Custody. Pursuant to Custodian Agreements, Etana Custody agreed to establish and maintain segregated accounts for which it would act as custodian. Etana Custody agreed that it would be responsible for the safekeeping of the assets deposited in these accounts, and that it would abide by the instructions provided by Kraken with respect to those assets and return them if so instructed.

3.      Currently, Etana Custody is holding approximately $26 million of custodial assets for Kraken (the "Kraken Custody Assets"), including approximately $25.8 million representing a reserve that Kraken left on deposit in order to obtain a fee waiver for Etana Custody's services (the "Reserve"). The Kraken Custody Assets are held in trust for the benefit of Kraken and its customers, who retain all legal rights and unfettered control over the assets.

4.      On April 1, 2025, Kraken requested the return of the Reserve. However, rather than return the Reserve as it is required to do under the Custodian Agreements, Etana Custody instead responded with baseless excuses, including at one point falsely claiming that the Reserve had already been returned to Kraken—a fact it has since conceded is not true.

5.      Only recently has Etana Custody revealed the truth: It has failed to properly account for the client assets it is holding in trust and believes it may have spent custodial funds in unauthorized ways, including on business expenses or unauthorized investments. As a result of these and other issues, Etana Custody is facing the potential loss of its charter and/or dissolution due to regulatory demands and deadlines that it is unable to meet.

6.      In light of this admission, Kraken has since demanded the return of the Kraken Custody Assets in full. To date, however, Etana Custody has failed and refused to return the Kraken Custody Assets, including the Reserve that was requested more than five months ago.

7.    Etana Custody's refusal to return the Kraken Custody Assets constitutes a clear breach of its obligations under the Custodian Agreements. Further, the actions of Etana Custody and its executives—including Chief Executive Officer Dion Brandon Russell and Chief Financial Officer Alexander Luton— such as failing to properly track, account for, and safekeep the custodial assets, also constitute a conversion of the Kraken Custody Assets and a breach of the fiduciary duties owed by Etana Custody as custodian and trustee.

8.    The Court should direct Etana Custody, Russell, and Luton to immediately return the Kraken Custody Assets.

<u>**PARTIES**</u>

9.    Plaintiff Payward Interactive, Inc. is a Florida corporation with its principal place of business in Cheyenne, Wyoming. Plaintiff Payward Trading, Ltd. is a British Virgin Islands company with its principal place of business in the British Virgin Islands. Plaintiffs, together with their parent company Payward, Inc. and other related entities, operate the global organization doing business as "Kraken."

10.    Kraken's primary business is an online trading platform where retail and professional investors can buy, sell, and use digital assets. Since its founding in 2011, Kraken has experienced rapid growth and today is one of the largest digital asset exchange platforms in the world, with more than 15 million users in over 190 countries and more than $200 billion in quarterly trading volume. A key reason for Kraken's popularity and growth is its robust security protocols, making it one of the safest digital asset exchanges in the world. In 2025, Kraken was voted the number one crypto exchange by Forbes, which cited Kraken's robust security measures,

low fees, wide range of assets, commitment to regulatory compliance, and track record of innovation and client support as factors contributing to its ranking.

11.     Defendant Etana Custody, Inc., f/k/a Etana Trust Company, is a Colorado corporation with its principal place of business in Denver, Colorado. Etana Custody, Inc. is licensed as a non-depository trust company with the Colorado Department of Regulatory Agencies, Division of Banking. Etana Custody, Inc. has also done business through various affiliates, including Defendant Etana Custody Limited, a New Zealand limited company with its principal place of business in Denver, Colorado. Together, Etana Custody, Inc. and Etana Custody Limited are referred to as "Etana Custody."

12.     Etana Custody offers custody services to customers, primarily institutions, for a wide range of digital assets and cryptocurrencies. It also provides clearing and trade settlement solutions for digital assets.

13.     Defendant Dion Brandon Russell is a resident of Denver, Colorado. Russell is the founder and Chief Executive Officer ("CEO") of Etana Custody and its affiliates. At all relevant times, he maintained control over Etana Custody and its affiliates.

14.     Defendant Alexander Luton is a resident of Greenwich, Connecticut and is the Chief Financial Officer ("CFO") of Etana Custody. On information and belief, since becoming CFO in or around May 2024, Luton has maintained control over the finances and custodial accounts of Etana Custody and its affiliates.

## JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy

exceeds $75,000, exclusive of interest and costs. Plaintiffs are corporations of Florida and the British Virgin Islands with their principal place of business in Wyoming and the British Virgin Islands, respectively. As outlined above, no defendant is a citizen of Florida, the British Virgin Islands, or Wyoming, and thus complete diversity exists.

16.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Colorado, or a substantial part of property that is the subject of the action is situated in and/or custodied from Colorado. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3) because three defendants are residents of Colorado and thus subject to the court's jurisdiction in this district, and there is no other district where a substantial part of the events or omissions giving rise to the action took place or where all defendants are residents. In addition, the relevant agreement between Payward Trading, Ltd. and Etana Custody Limited states:

> The State and Federal Courts located in Denver, Denver County, Colorado shall have sole and exclusive jurisdiction over any dispute in connection with, arising out of, or related to this Agreement and any instructions given hereunder, and each party hereby irrevocably consents to the personal jurisdiction of such courts for any such dispute and irrevocably waives any objection to the venue of such courts for any such dispute, and waives any defense of forum non conveniens.

### FACTUAL ALLEGATIONS

**A.    Kraken Contracts with Etana Custody for Custodial Services.**

17.    Etana Custody has provided certain custodial services to Kraken (the "Custodial Services") pursuant to several Custodian Agreements.

18.     Payward, Inc. and Etana Custody Limited were parties to a Custodian Agreement dated July 31, 2018 (the "PTL Custodian Agreement"), a copy of which is attached hereto as **Exhibit A**. Russell signed the PTL Custodian Agreement on behalf of Etana Custody Limited.

19.     Through a series of transfers, the PTL Custodian Agreement was assigned from Payward, Inc. to its subsidiary, Payward Trading, Ltd.

20.     On information and belief, since entering into the PTL Custodian Agreement, the Custodial Services have been provided by Etana Custody, Inc., which is also controlled by Russell and regulated by the Colorado Department of Regulatory Agencies, Division of Banking.

21.     In addition, Payward Interactive, Inc. and Etana Custody, Inc. are parties to a Custodian Agreement dated August 8, 2024 (the "PWI Custodian Agreement"), a copy of which is attached hereto as **Exhibit B**. Russell signed the PWI Custodian Agreement on behalf of Etana Custody, Inc.

22.     Etana Custody is one of several custodial account providers with whom Kraken has partnered. Custody providers like Etana Custody allow Kraken to offer its customers the ability to fund their Kraken accounts with various fiat currencies and to make near-instant transfers into the Kraken ecosystem around the clock. Etana Custody allows Kraken's customers to fund their Kraken accounts with seven major currencies: USD, EUR, CAD, GBP, AUD, CHF, and JPY. Transfers of funds between Etana Custody's custodial accounts and Kraken accounts are free to Kraken customers and nearly instant. Such transfers are not restricted to banking hours but rather are available to Kraken customers 24 hours per day.

23.     On its website, Etana Custody markets its custodial services as follows:

Etana offers a comprehensive custody platform for the custody of cryptocurrencies, and digital assets through our cold, hot or MPC

6

wallet solutions. This integrated technology ensures asset availability to Etana's partners including financial institutions, exchanges and other counterparty partners where a client has an open account. With Etana, clients in over 100 countries can custody a range of digital coins, ERC tokens, and G10 currency pairs.

Crypto and Digital Asset Custody: For custody of crypto currencies and digital assets, Etana's platform integrates a number of SOC-compliant sub-custodian wallet providers. Multiple security and insurance levels are available, from cold storage to advanced MPC technology that creates cold wallet safety with the immediate trading access of a hot wallet.

Foreign Currency Custody: Supporting G10 currencies with clients in over 100 countries, assets are held in digital-friendly, insured bank accounts. When Etana clients link their accounts to our exchange partners, their balances are available to trade on the exchange without waiting for lengthy or costly transfers. Time and money are saved, along with mitigating counterparty risk.

Safe. Secure. Trusted. Our industry-leading suite of custody and trade support solutions allows clients to manage their global currency and digital assets from a secure environment linked to many service providers. Our high compliance standards give clients peace of mind, knowing their assets will stay protected and secure. Etana Custody is a chartered trust company regulated by the Colorado Division of Banking.[1]

24.    As a non-depository trust, Etana Custody does not directly hold customer deposits. Etana Custody directs those deposits to its banking partners while continuing to exercise custodial control over the funds.[2]

25.    In the Custodian Agreements, Etana Custody agreed that it would establish and maintain custody and cash accounts for the deposit of "Custody Assets," defined to include digital

---

[1] Crypto Custody Services, Etana Custody, https://etana.com/crypto-custody-services (last accessed September 9, 2025).

[2] *See* Plaintiff Etana Custody, Inc.'s Motion for Temporary Restraining Order and Preliminary Injunction at 5, *Etana Custody, Inc. v. State of Colorado, et al.*, Case No. 2025CV33160 (Denv. Dist. Ct. Sept. 3, 2025).

assets, securities, property, cash, or other assets deposited by clients with Etana Custody; and that such accounts would be "under the direction or control of ETANA CUSTODY for the account of the Client," *i.e.*, Kraken. (Ex. A § 2.1; *see also* Ex. B §§ 2.1(g), 3.1).

26.     The Custodian Agreements also provide that Etana Custody "shall be responsible for th[e] safekeeping, as custodian for the account of [Kraken]," of all "Securities, cash, other monies and any other items of property or assets" deposited in the accounts. (Ex. A § 2.2; Ex. B § 3.4).

27.     Under the Custodian Agreements, Etana Custody further agreed to keep the Custody Assets segregated on its books. The Custodian Agreements state that Etana Custody's duties include "to hold the Custody Assets in segregated accounts in its books," to take certain actions to "safekeep[]" deposited securities, and "to record the amounts and locations thereof." (Ex. A § 5.6; Ex. B § 6.6).

28.     In the more-recent PWI Custodian Agreement, Etana Custody even more clearly explains its role as trustee and custodian. For example, in the PWI Custodian Agreement:

    a.     Etana Custody states that the Custody Assets for which Etana Custody provides Custodial Services are not directly held by Etana Custody but rather that Etana Custody establishes "an account on ETANA ledgers" and that any "money or funds" deposited "from a Client's deposit account" is "tracked in the Client's name on ETANA's ledger." (Ex. B § 3.1).

    b.     Etana Custody agreed that Kraken "is the sole, individual owner of the . . . assets" deposited in the accounts, and that Etana Custody "does not and will not establish accounts with multiple owners." (Ex. B § 3.2).

8

c.     Etana Custody acknowledges Kraken has "the sole authority, responsibility and discretion, fully and completely, to select and to direct all transactions," that "[t]he assets in the Custody Account and Cash Account will only be invested in accordance with the Client's instructions," and that "responsibility for the selection, acquisition and disposal of the Custody Assets remains with the Client at all times." (Ex. B §§ 7.1, 7.4, 7.5).

29.     Pursuant to the terms of the Custodian Agreements, Etana Custody is bound to abide by the instructions provided by Kraken with respect to the Custody Assets. Etana Custody may act only upon "Instructions" from Kraken. (Ex. A § 3.2; Ex. B § 4.2). Further, Etana Custody is required to carry out the Instructions without the exercise of discretion: "Except as otherwise provided in this Agreement, all transactions involving the Custody Assets shall be executed or settled or otherwise carried out solely in accordance with Instructions." (Ex. A § 3.3; Ex. B § 6.3).

30.     Etana Custody is required, "in the event of termination of this Agreement, to deliver or transfer the Custody Assets to [Kraken] or to such other person(s) as [Kraken] shall instruct…." (Ex. A § 5.5; Ex. B § 6.5).

31.     Pursuant to the Custodian Agreements, Kraken and its customers deposited funds into custodial accounts established by Etana Custody.

**B.     <u>Kraken Provides the Reserve in Exchange for Reduced Fees.</u>**

32.     On or about January 23, 2020, Kraken and Etana Custody entered into an Amendment to the Fee Schedule (attached hereto as **Exhibit C**), pursuant to which Etana Custody agreed to reduce its fees for the Custodial Services to zero if Kraken provided a deposit of at least $20 million (the "Reserve"). For each month that Kraken allowed the Reserve to remain on the

Etana Custody platform, Etana Custody waived all fees under the PTL Custodian Agreement for that month.

33.    In the Amendment to the Fee Schedule, Etana Custody further agreed to return the Reserve by no later than "10 business days after the end of the 30-day period" following receipt of notice. (Ex. C). Specifically, the Amendment to the Fee Schedule states:

> The program rolls on 30-day periods which automatically renew, unless a minimum of 5 business days' notice is given before the end of each 30-day period.
>
> Once notice is received, delivery will take place 10 business days after the end of the 30-day period.

(Ex. C).

34.    The Reserve remained subject to Etana Custody's contractual obligations as a custodian and all other terms of the PTL Custodian Agreement. Specifically, the Amendment to the Fee Schedule states: "These changes are the only changes to the original contract. The entire remainder of the original contract remains in full force." (Ex. C).

35.    Russell signed the Amendment to the Fee Schedule on behalf of Etana Custody.

36.    To fund the Reserve, Kraken instructed Etana Custody to apply approximately $25,840,506.04 of previously-deposited Custodial Assets to the Reserve, which Etana Custody was permitted to invest only in accordance with Kraken's instructions per Section 10.4 of the PTL Custodian Agreement and Section 7.4 of the PWI Custodian Agreement.

**C.    <u>Etana Custody Refuses to Return the Kraken Custody Assets.</u>**

37.    On or about April 1, 2025, Kraken requested the return of the Reserve in accordance with the terms of the Custodian Agreements and the Amendment to the Fee Schedule.

38.    As noted above, under the Amendment to the Fee Schedule, Etana Custody was obligated to return the Reserve no later than "10 business days after the end of the 30-day period" following receipt of notice. (Ex. C).

39.    Etana Custody, however, has refused to return the Reserve.

40.    Rather than return the Reserve, as it is required to do, Etana Custody employed a series of baseless delay tactics, including falsely claiming, under the guise of a sham "reconciliation process," that its bank had reversed a €25 million payment made by Kraken in November 2022 and that, therefore, the Reserve had already been returned to Kraken prior to its demand. This was false and was directly contradicted by the statements Kraken routinely received from Etana Custody and the online balance displayed to Kraken when it accessed its Etana Custody account. As Kraken's finance team confirmed, the Reserve has not been returned. Etana Custody effectively conceded the Kraken Custody Assets are owed to Kraken.

41.    On or about August 25, 2025, while continuing to refuse to return the Reserve, Etana Custody, through its counsel, revealed that the real reason for the delay in returning the Reserve was Etana Custody's failure to properly account for the Custody Assets.

42.    Three days earlier, on August 22, 2025, Etana Custody had received a Cease and Desist Order from the Colorado Department of Regulatory Agencies, Division of Banking.

43.    The Cease and Desist Order followed the Colorado Division of Banking's actions, including heightening Etana Custody's reporting requirements, increasing Etana Custody's capital reserve requirements from $300,000 to $3 million, requiring Etana Custody to increase its security deposit from $250,000 to $1 million, and demanding that Etana Custody provide a reconciliation.

44.    As Etana Custody's counsel explained, the company had been given a September 4, 2025 deadline to provide the reconciliation and meet the Division of Banking's increased capital reserve requirement. However, according to Etana Custody's counsel, "Etana is confident that the balances reported to Kraken will not reconcile" and the company was unlikely to meet the regulator's deadline or raise the required funds.

45.    As a result of these issues, Etana Custody informed Kraken that it was facing the potential loss of its charter and/or dissolution. Etana Custody requested Kraken's assistance in the form of a loan or investment "to stave off the regulator, provide bandwidth to complete the reconciliation, and provide a pathway to making Kraken whole."

46.    Etana Custody conveyed this information to Kraken by phone and by email. The email sent to Kraken by Etana Custody's counsel on August 25, 2025 stated:

> Etana faces a September 4th deadline to complete its reconciliation and demonstrate capital adequacy, but challenges with data reliability and delays from vendors supplying documentation make timely completion unlikely. The reconciliation spans activity related to Kraken dating back to 2019, and Etana is confident that the balances reported to Kraken will not reconcile. Additionally, the firm requires an extra $3.75 million in capital to meet adequacy requirements. Etana is looking to speak with you to stave off the regulator, provide bandwidth to complete the reconciliation, and provide a pathway to making Kraken whole.

47.    Kraken was highly troubled to learn of Etana Custody's regulatory issues and that there was a risk of Kraken not being made "whole" with respect to the assets it entrusted to Etana Custody. Kraken was also troubled by Etana Custody's admission that "the balances reported to Kraken will not reconcile." During subsequent discussions, Russell admitted that Etana Custody has failed to properly track and segregate the Custody Assets it is entrusted to protect, and that the

company likely spent at least some custodial funds in unauthorized ways, such as on operating expenses or unauthorized investments.

48.     During those conversations, Russell also discussed the Colorado Division of Banking's other demands and admitted that Etana Custody had no way to obtain the additional $750,000 for the increased security deposit by the September 5, 2025 deadline imposed by the Division of Banking. This further concerned Kraken, as $750,000 is a relatively small and obtainable sum of money for a company holding such large sums on behalf of others. Likewise, Kraken was disturbingly being asked to provide these funds in the form of a loan or investment, signaling to Kraken that Etana Custody had no access to capital or other means to rectify its situation.

49.     During these conversations, Etana Custody, through Russell and its outside counsel, repeatedly emphasized that, absent a near-term loan or investment, Etana Custody might lose its charter, dissolve, and/or be rendered insolvent.

50.     Given Etana Custody's stunning revelations, Kraken demanded that Etana Custody return the full amount of the Kraken Custody Funds that had been deposited with Etana Custody pursuant to the Custodian Agreements, approximately $25,941,888.48. That sum consists of:

a.   The Reserve of approximately $25,840,506.04, comprising approximately $25,000,025 held on behalf of PTL pursuant to the PTL Custodian Agreement and approximately $840,481.04 held on behalf of PWI pursuant to the PWI Custodian Agreement; and

b.   Additional custodial funds totaling $101,382.44, comprising approximately $101,132.44 held on behalf of PTL pursuant to the PTL Custodian Agreement and

approximately $250 held on behalf of PWI pursuant to the PWI Custodian Agreement.

51.     Under the Custodian Agreements and the Amendment to Fee Schedule, these funds are required to be returned as instructed by Kraken.

52.     Defendants Russell and Luton have directly participated in Etana Custody's misappropriation and misuse of the Kraken Custody Assets, including the Reserve. Defendant Russell controlled the Etana Custody business at all relevant times, and Defendant Luton controlled the financial affairs of the Etana Custody business at all relevant times since he became CFO on or about May 2024. To the extent any Custody Assets have been used in unauthorized ways, such misuse occurred under the direction and control, and with the knowledge, of Russell and Luton. Further, both Russell and Luton also directly participated in the delay tactics that Etana Custody used to stave off Kraken's efforts to recover its assets for several months.

53.     Kraken made further demands for the return of the Kraken Custody Assets on September 3 and September 5, 2025.

54.     On September 3, 2025, Etana Custody filed a Motion for Temporary Restraining Order and Preliminary Injunction in the Colorado District Court, City and County of Denver, against the Division of Banking, its commissioners, and the Colorado State Banking Board. The motion sought a stay of the deadlines imposed by the Division of Banking. During the hearing on this motion, Etana Custody's counsel indicated that Etana Custody could be forced into insolvency if required to comply with the Colorado Division of Banking's newly imposed requirements.

55.     To date, Etana Custody has failed and refused to return the Kraken Custody Assets, in violation of the Custodian Agreements.

56.     In the PWI Custodian Agreement, Etana Custody agreed that such a violation would

cause irreparable harm to Kraken:

> The parties agree that irreparable harm would result to, and that legal
> damages would not adequately compensate, a party if any part of
> this Agreement is not performed in accordance with the terms
> hereof, and that such party shall be entitled to move for an injunction
> or injunctions to prevent breaches of this Agreement or to enforce it
> specifically in addition to any other remedy to which such party is
> entitled at law or in equity."

(Ex. B § 23).

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Breach of Contract Against Etana Custody, Inc. and Etana Custody Limited)**

57.     Kraken repeats and re-alleges the foregoing allegations contained in this Complaint

with the same force and effect as if fully set forth herein.

58.     On July 31, 2018 and August 8, 2024, Kraken and Etana Custody entered into valid,

enforceable, and binding contracts—the Custodian Agreements—the terms of which Kraken duly

performed with respect to its own obligations thereunder.

59.     On January 23, 2020, Kraken and Etana Custody entered into a valid, enforceable,

and binding Amendment to the Fee Schedule for their prior contract, the terms of which Kraken

duly performed with respect to its own obligations thereunder.

60.     By the acts, practices, and omissions described above, Etana Custody breached the

terms of the Custodian Agreements and Amendment to the Fee Schedule, which require Etana

Custody to surrender the Kraken Custody Assets on request, and which Etana Custody has refused

to do.

61.     Under the Custodian Agreement, Etana Custody is required to return Kraken Custody Assets upon receiving "Instructions" from Kraken to do so.

62.     Under the Amendment to the Fee Schedule, Etana Custody is required to return the Reserve no later than 10 business days after the end of the 30-day period in which Kraken gives notice.

63.     On or about April 1, 2025, Kraken requested return of the Reserve.  On or about August 25, 2025, Kraken requested the return of all other Kraken Custody Assets.

64.     Etana Custody has refused, without justification, to return these assets in material breach of the parties' agreements.

65.     As a direct and proximate result of Etana Custody's breaches, Kraken has suffered damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**(Conversion and Civil Theft Against All Defendants)**

66.     Kraken repeats and re-alleges the foregoing allegations contained in this Complaint with the same force and effect as if fully set forth herein.

67.     Etana Custody currently possesses approximately $25,941,888.48 of Kraken Custody Assets that it is required to return to Kraken under the Custodian Agreements and Amendment to the Fee Schedule. This consists of:

a.  The Reserve of approximately $25,840,506.04, comprising approximately $25,000,025 held on behalf of PTL pursuant to the PTL Custodian Agreement and approximately $840,481.04 held on behalf of PWI pursuant to the PWI Custodian Agreement; and

b.   Additional custodial funds totaling $101,382.44, comprising approximately $101,132.44 held on behalf PTL pursuant to the PTL Custodian Agreement and approximately $250 held on behalf of PWI pursuant to the PWI Custodian Agreement.

68.   Kraken maintains legal ownership of these assets per its agreement with Etana Custody and has an immediate right of possession under the terms of the Custodian Agreements.

69.   Kraken has demanded return of the assets and Etana Custody has improperly refused to return them.

70.   Etana Custody fabricated a reconciliation issue in an attempt to justify its unlawful conversion and theft.

71.   Etana Custody has stated that Kraken's account balances do not reconcile. In other words, Etana Custody has retained or used Kraken's assets without authorization by, including but not limited to, potentially misappropriating the Kraken Custody Assets to cover operating expenses or unauthorized investments.

72.   Etana Custody has converted the assets and exercised dominion and control over them, contrary to Kraken's rights.

73.   Etana Custody has knowingly retained and exercised control over the Kraken Custody Assets without authorization.

74.   Etana Custody intends to deprive Kraken permanently of the use of these assets.

75.   Etana Custody has knowingly used these assets in such a manner as to deprive Kraken permanently of their use.

76.    Etana Custody has used these assets with the intent to deprive Kraken permanently of their use or benefit.

77.    Defendants Russell and Luton either participated in or knew of Etana Custody's misappropriation, conversion, theft, and/or failure to return these assets upon demand.

78.    As a direct and proximate result of Etana Custody's conduct, Kraken has suffered damages in an amount to be determined at trial. Under CRS § 18-4-405, Etana Custody is liable for "three times the amount of the actual damages sustained by" Kraken.

### THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty Against All Defendants)

79.    Kraken repeats and re-alleges the foregoing allegations contained in this Complaint with the same force and effect as if fully set forth herein.

80.    At all relevant times, Etana Custody, Russell, and Luton have owed a fiduciary duty to Kraken, including as Kraken's agents and trustees of Kraken's custodial accounts. When a party is trusted with funds under an escrow or custodial arrangement, fiduciary duties attach by virtue of the segregation requirement as well.  Individual executives of a trust company likewise owe these same fiduciary duties to their customers by virtue of the segregation requirement.

81.    Despite Etana Custody's, Russell's, and Luton's duty to safeguard and hold in trust custodial funds, Etana Custody, Russell and Luton are currently unable to reconcile Kraken's account balances. Defendant Russell has admitted that Etana Custody has not properly tracked and segregated custodial funds, and may have spent custodial funds on improper purposes and without authorization. Luton, as Chief Financial Officer, is the individual responsible for said accounts. Etana Custody has even informed Kraken that, because of its misconduct, it may not be able to "mak[e] Kraken whole."

82.     Therefore, Etana Custody breached its fiduciary duty by, among other things, failing to properly track, segregate, safekeep custodial funds, and likely misappropriating custodial funds, including by spending them in unauthorized ways, such as on operating expenses or unauthorized investments. These actions constitute misconduct by all Defendants.

83.     Etana Custody, Russell, and Luton have thereby caused harm to Kraken by, through its misconduct and potential misappropriation, failing to segregate, track, and safekeep the Kraken Custody Assets, being unable to return the Kraken Custody Assets on demand, and negligently placing those Assets at risk of loss and protracted illiquidity.

### FOURTH CAUSE OF ACTION
### (Aiding and Abetting Breach of Fiduciary Duty Against Dion Brandon Russell and Alexander Luton in the Alternative)

84.     Kraken repeats and re-alleges the foregoing allegations contained in this Complaint with the same force and effect as if fully set forth herein.

85.     At all relevant times, Etana Custody has owed a fiduciary duty to Kraken, including as Kraken's agent and trustee of Kraken's custodial accounts.

86.     Etana Custody breached its fiduciary duty by, among other things, failing to properly track, segregate, safekeep, and likely misappropriating custodial funds, and potentially spending them in unauthorized ways, such as on operating expenses or unauthorized investments. These actions constitute misconduct.

87.     In the event the Court finds that Russell and Luton did not owe or breach a fiduciary duty to Kraken, the Court should find that Russell and Luton aided and abetted Etana Custody's breach of fiduciary duty.

88.    Russell and Luton knowingly participated in and gave substantial assistance to Etana Custody's breach of fiduciary duty by, as the CEO and CFO of Etana Custody (respectively), directing, coordinating, contributing to or otherwise taking part in Etana Custody's misconduct.

89.    Russell was at all relevant times Etana Custody's principal representative and contact with Kraken regarding Etana Custody's misappropriation of Custody Assets and failure to return the Kraken Custody Assets. For example, Russell admitted that Etana Custody has failed to properly track and segregate custodial funds, and that it has likely spent at least some custodial funds in unauthorized ways, such as on operating expenses or unauthorized investments.

90.    Luton was, since May 2024, at all relevant times the corporate officer primarily responsible for Etana Custody's misappropriation of and other misconduct regarding the Kraken Custody Assets. By virtue of his role as CFO, Luton failed to properly track, segregate, safekeep, and refrain from misappropriating custodial funds.

91.    Russell and Luton's aiding and abetting of Etana Custody's breach of fiduciary duty has caused harm to Kraken by failing to segregate, track, and safekeep the Kraken Custody Assets, rendering Etana Custody unable to return the Kraken Custody Assets, and negligently placing those Assets at risk of loss and protracted illiquidity.

### FIFTH CAUSE OF ACTION
### (Accounting Against Etana Custody, Inc. and Etana Custody Limited)

92.    Kraken repeats and re-alleges the foregoing allegations contained in this Complaint with the same force and effect as if fully set forth herein.

93.    At all relevant times Etana Custody was a fiduciary of Kraken regarding the management of the Kraken Custody Assets. Accordingly, Etana Custody owed Kraken fiduciary duties of good faith, candor, loyalty, and care with regard to those assets.

20

94.     As legal owner of the Custody Assets, Kraken has the right to demand an accounting of the property being held in trust for its benefit.

95.     Kraken engaged with Etana Custody for several weeks in or around April 2025 to reconcile its accounts. Despite repeated requests to explain the nature of the funds being held on its behalf, and how and where those funds were being held and safekept, no meaningful answers were forthcoming.

96.     Etana Custody informed Kraken in August 2025 that it could not reconcile its books to adequately track the Custody Assets.

97.     The Custody Assets have not been turned over, and no reconciliation has been provided sufficient to assure Kraken that the Kraken Custody Assets remain in safekeeping pursuant to the Custodian Agreements.

98.     Kraken has no adequate remedy at law.

99.     Etana Custody should be required to account to Kraken for any and all moneys expended in connection with Kraken's account.

**SIXTH CAUSE OF ACTION**
**(Unjust Enrichment Against Etana Custody, Inc. and Etana Custody Limited)**

100.    Kraken repeats and re-alleges the foregoing allegations contained in this Complaint with the same force and effect as if fully set forth herein.

101.    In reliance on Kraken's promises and its status as a fiduciary, Kraken entrusted Etana Custody with access to the Kraken Custody Assets. Based on Etana Custody's admissions, it appears that Etana Custody may have misappropriated the Kraken Custody Assets for use in unauthorized transactions, including to pay for its own operating expenses or make unauthorized investments.

102.     Etana Custody's improper continued possession of the Kraken Custody Assets following Kraken's demand for their return has been at Kraken's detriment and expense.

103.     Because Etana Custody had no right or basis to use the Kraken Custody Assets or withhold them from Kraken, it would be against equity and good conscience to permit Etana Custody to retain the Kraken Custody Assets and any other benefit Etana Custody has obtained via their use and/or retention.

### PRAYER FOR RELIEF

Wherefore, Kraken respectively requests that this Court enter a judgment against Defendants for:

A. Judgment in Kraken's favor and against Defendants;

B. Monetary damages in an amount to be determined at trial;

C. Prepetition and post-judgment interest to the fullest extent permitted by law;

D. Specific performance requiring Etana Custody to return or give the Reserve and any benefits derived therefrom to Kraken;

E. A temporary restraining order, preliminary injunction, and permanent injunction preventing Etana Custody from depleting or transferring the Reserve or commingling it with Etana Custody's funds;

F. An accounting;

G. Punitive and treble damages to the maximum extent permitted by law;

H. Attorneys' fees and costs to the fullest extent provided for in the parties' contract or otherwise permitted under law or equity; and

I. Other such relief as the Court may deem just and proper.


**PLAINTIFFS DEMAND A JURY TRIAL ON ALL CLAIMS SO TRIABLE**.

Dated: September 9, 2025

Respectfully submitted,

/s/*Kenneth F. Rossman, IV*
Kenneth F. Rossman, IV
**WOMBLE BOND DICKINSON (US) LLP**
1601 19th Street, Suite 1000
Denver, CO 80202
Phone: (303) 623-9000
Facsimile: (303) 623-9222
Ken.Rossman@wbd-us.com

Renee Zaytsev *(application forthcoming)*
Luke Williams *(application forthcoming)*
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Phone: (212) 446–2359
rzaytsev@bsfllp.com
lwilliams@bsfllp.com

Brooke Alexander *(application forthcoming)*
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Phone: (914) 749–8200
balexander@bsfllp.com

*Counsel for Plaintiffs*