IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:  1:25-cv-2829-DDD-CYC

Payward Interactive, Inc. and Payward Trading,
Ltd. d/b/a Kraken,

        Plaintiffs,

v.

Etana Custody Limited, Etana Custody, Inc.,
and Dion Brandon Russell,

        Defendants.

## DEFENDANT DION BRANDON RUSSELL'S FED. R. CIV. P. 12(B)(6) MOTION TO DISMISS FIRST AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 12(b)(6) and D.C.COLO.LCivR 7.1, Defendant Dion Brandon Russell ("Russell") moves to dismiss the Second, Third, and Fourth "Causes of Action" against Russell in Plaintiffs Payward Interactive, Inc. and Payward Trading, Ltd.'s (collectively, "Plaintiffs" or "Kraken") First Amended Complaint ("FAC" [ECF 44]).

### I.    REASONS THE CLAIMS AGAINST RUSSELL SHOULD BE DISMISSED

This case arises from a dispute between a digital asset exchange, Kraken, and a non-depository trust company, Etana Custody, Inc. ("Etana") regarding Etana's alleged custody of certain funds belonging to Kraken. Etana's responsibilities to Kraken are governed by two contracts and one amendment. In the FAC, Plaintiffs allege Etana breached these agreements by failing to account for Kraken assets and failing to return assets upon demand.

Plaintiffs' claims in the FAC are based on Etana's alleged failures to maintain and return Kraken assets held under those corporate entities' agreements. Yet Plaintiffs also assert three claims against Etana's Chief Executive Officer, Russell: Conversion and Civil Theft, Breach of Fiduciary Duty, and Aiding and Abetting Breach of Fiduciary Duty.

The Court should dismiss Plaintiffs' claims against Russell for at least six reasons. *First*, Russell is an individual executive and Colorado law generally precludes claims against individual officers for alleged breaches by the corporation. Thus, none of the elements of any claims can be satisfied as to Russell.

*Second*, Plaintiffs' tort claims against Russell are barred by Colorado's economic loss rule. This rule bars tort claims that are based on contractual duties, such as those raised by Plaintiffs. Thus, none of the elements of any claims can be satisfied as to Russell.

*Third*, Plaintiffs' conversion and civil theft claim fails because it is devoid of any specific allegations that Russell, as opposed to Etana, took any actions giving rise to such a claim. Plaintiffs fail to allege specific facts against Russell in support of any element of conversion or civil theft.

*Fourth*, Plaintiffs' breach of fiduciary duty claim must be dismissed because the alleged fiduciary duty arises from the contract between Etana and Kraken, not Russell. Assuming all allegations are true: Russell did not assume a fiduciary duty to Plaintiffs (element one), Russell did not breach any duty to Plaintiffs specifically (element two), and any alleged damages are based on purported failings by Etana, not Russell (elements three and four).

*Fifth*, the aiding and abetting claim fails because Plaintiffs allege only sparse, conclusory allegations as to how Russell committed the tort. For reasons discussed in Section IV.D, Russell did not owe a fiduciary duty to Plaintiffs, a threshold requirement. Plaintiffs also fail to allege facts

2

showing Russell knowingly participated in the alleged breach or his actions caused damage to Plaintiffs, two required elements for aiding and abetting liability.

***Sixth***, the underlying custodial agreement between Kraken and Etana expressly precludes claims for damages except those based on fraud, willful default, or gross negligence—none of which Plaintiffs plead here. Thus, none of the elements of any claims can be satisfied as to Russell.

## II.  FACTUAL BACKGROUND

Plaintiffs filed their First Amended Complaint, in which they asserted six causes of action. (FAC [ECF 44].)

Plaintiffs bring their claims under three contracts between corporate entities:

- "Payward, Inc. and Etana Custody Limited are parties to a Custodian Agreement dated July 31, 2018" (FAC, ¶ 18);

- "Payward Interactive, Inc. and Etana Custody, Inc. are parties to a Custodian Agreement dated August 8, 2024" (*id. ¶* 21);

- "On or about January 23, 2020, Kraken and Etana Custody entered into an Amendment to the Fee Schedule" (*id. ¶* 32)

Plaintiffs reference each contract and attach the documents as exhibits to the FAC. (*Id.*, Exs. 1-3.)

Under the agreements, "Etana Custody agreed that it would establish and maintain custody and cash accounts for the deposit of 'Custody Assets,' defined to include digital assets, securities, property, cash, or other assets deposited by clients with Etana Custody; and that such accounts would be 'under the direction or control of ETANA CUSTODY for the account of the Client,' i.e., Kraken." (FAC, ¶ 25, quoting Exs. 1-2.) Plaintiffs allege, pursuant to the agreements, "Etana Custody 'shall be responsible for th[e] safekeeping, as custodian for the account of [Kraken],' of all 'Securities, cash, other monies and any other items of property or assets' deposited in the

3

accounts." (*Id.*, ¶ 26, quoting Exs. 1-2). Plaintiffs further allege "Etana Custody agreed to keep the Custody Assets segregated on its books." (*Id.* ¶ 27). None of these duties inure to Russell.

### III.  DISMISSAL IS WARRANTED UNDER THE LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a "complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### IV.  ARGUMENT

#### A. Russell, an Individual Executive, Cannot be Liable for Alleged Actions by Etana or by Russell While Acting Within the Scope of His Corporate Duties.

This is a breach of contract case between Etana and Kraken. Plaintiffs expressly incorporate agreements between the corporate entities and assert purely contractual claims against Etana. But Plaintiffs also assert claims against Russell, Etana's CEO, individually for conversion and civil theft, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty. Plaintiffs do not explain how an individual corporate executive can be liable for alleged actions by the corporate entity. Under Colorado law, an officer of a corporation cannot be personally liable for a corporation's tort based solely on his official capacity.

Importantly, "[a] duly formed corporation is treated as a separate legal entity, unique from its officers, directors, and shareholders." *Sedgwick Props. Dev. Corp. v. Hinds*, 456 P.3d 64, 68

4

(Colo. 2019). "This separate status isolates the actions, profits, and debts of the corporation from the individuals who invest in and run the entity." *In re Phillips*, 139 P.3d 639, 643 (Colo. 2006). Indeed, "[i]nsulation from individual liability is an inherent purpose of incorporation; only extraordinary circumstances justify disregarding the corporate entity to impose personal liability." *Leonard v. McMorris*, 63 P.3d 323, 330 (Colo. 2003). Courts rarely "ignore the independent existence of the business entity and pierce the corporate veil to achieve an equitable result." *Id.*; *see also Newport Steel Corp. v. Thompson*, 757 F. Supp. 1152, 1157 (D. Colo. 1990) (applying Colorado law) (declining to disregard corporate shield where plaintiff failed to show any facts supporting individual liability against corporate officer).

Here, Plaintiffs endeavor to place individual liability on Russell for the obligations of the corporation. Namely, Plaintiffs allege Russell either "participated in or knew of Etana Custody's misappropriation, conversion, theft, and/or failure to return" Kraken's funds. (FAC, ¶ 78.) Plaintiffs make no effort to pierce the corporate veil. *See Hinds*, 456 P.3d at 69 (noting that piercing the corporate veil requires a three-part test: establishing alter ego, the existence of "corporate fiction," and determining equitable relief). Nor could they, because none of the hallmark signs of corporate fiction are present here, such as inadequate record keeping or disregard for legal formalities. *In re Phillips*, 139 P.3d at 644. Moreover, Plaintiffs do not and cannot allege Russell acted outside the scope of his duties as CEO.

Plaintiffs' attempt to bring claims against a corporate officer for alleged breaches of Etana's contractual obligations departs from Colorado law. It would be improper to employ the "extraordinary" remedy and impute personal responsibility to Russell. *McMorris*, 63 P.3d at 330. As explained in more detail below, *infra* Section IV.C, Plaintiffs have failed to plead any

5

independent tort remedy that would avoid the requirement of piercing the corporate veil. Accordingly, Plaintiffs' claims cannot be properly brought against Russell in his individual capacity and all claims against Russell should be dismissed.

### B. Plaintiffs' Tort Claims are Barred under Colorado's Economic Loss Rule.

The economic loss rule dictates "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000). Thus, unless the tort claim arises from a duty independent of any contractual duties, the economic loss rule applies to bar the claim. *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1193 (Colo. App. 2008) ("If the tort claims are based on duties that are imposed by contract, then contract law provides the remedies for economic losses."). "Contract obligations arise from promises the parties have made to each other, while tort obligations generally arise from duties imposed by law to protect citizens from risk of physical harm or damage to their personal property." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004).

Under Colorado law, for a duty to be "independent" it must satisfy two conditions: "First, the duty must arise from a source other than the relevant contract" and "[s]econd, the duty must not be a duty also imposed by the contract." *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009). Here, Plaintiffs do not allege Russell owed them any duty except those duties Etana owed under the contracts. Specifically, Plaintiffs allege *Etana* owed Kraken various duties, including to: segregate accounts (FAC, ¶¶ 2, 27), safekeep assets (FAC, ¶¶ 2, 7, 26-27), and maintain custody of Kraken Custody Assets, (FAC, ¶ 25). Plaintiffs allege Russell owed those same duties as a purported fiduciary to Kraken—all squarely arising under Etana's

6

contracts with Kraken. (FAC, ¶¶ 83, 87.) Plaintiffs' fiduciary duty claim fails because it is based on duties either expressly under the contract or otherwise contemplated under the contract. *Grynberg*, 985 P.2d 59 at 62.

*Levin v. Five Corner Strategies, LLC*, 541 F. Supp. 3d 1262 (D. Colo. 2021) illustrates this principle well. There, the district court granted summary judgment because the economic loss rule barred tort claims where the source of the alleged duties was a contract. *Id.* at 1269-70. This rule also equally applied to bar claims against individual defendants, notwithstanding a lack of contractual privity. Where the economic loss rule bars a claim against a corporation, it may also bar a claim against the entity's officers. "This occurs where . . . those related individuals' rights and obligations are derived from the contract at issue." *Id.* at 1270.

To state a viable claim for breach of fiduciary duty, Plaintiffs must allege some special relationship between Russell and Kraken that creates an independent duty. "The special relationships recognized in Colorado, and they are few, share the same characteristic: each implicates a risk of damages to interests that contract law is not well suited to protect." *A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 540 (Colo. App. 2011). No such special relationship exists here and Kraken's interests are remedied under the contracts between Kraken and Etana. Indeed, the Tenth Circuit rejected a similar fiduciary duty claim against an executive where the duties arose under the parties' contract and "the contract would provide a perfectly suitable remedy." *Rice's Lucky Clover Honey, LLC v. Hawley*, 700 F. App'x 852, 859 (10th Cir. 2017).

Plaintiffs' conversion and civil theft claim is similarly barred because Plaintiffs' allegations, while purportedly in support of this tort claim, mirror Plaintiffs' contractual claims.

7

Plaintiffs allege Etana possesses millions of dollars in Kraken Custody Assets, which Kraken transferred to Etana pursuant to the Custodian Agreements and Amendment to the Fee Schedule. (FAC, ¶¶ 2-3, 17-19, 31, 36.) Plaintiffs further allege Etana was required to return those assets under the same contracts with Kraken. (FAC, ¶¶ 33, 37-38, 27.) Plaintiffs allege Etana failed to return the assets and knowingly exercised control over the assets without authorization, which Plaintiffs allege "constitute[] a clear breach of [Etana's] obligations under the Custodian Agreements." (FAC, ¶¶ 7, 39.)

Plaintiffs do not offer any allegations as to how Russell, as opposed to Etana, converted or stole the Kraken Custody Assets. Even if the conversion and civil theft allegations to Etana are somehow imputed to Russell, the claim still fails because the allegations arise entirely under the contract. "[E]ven a duty separately recognized under tort law is not independent if it is also imposed under the parties' contract." *A Good Time Rental, LLC*, 259 P.3d at 537. Kraken authorized Etana to hold custody of the assets pursuant to the contracts between the parties. Plaintiffs do not allege any duties outside of those required by contract. To avoid the economic loss rule, a conversion claim must be based on an independent duty to those existing contractual duties. *See Carder, Inc. v. Cash*, 97 P.3d 174, 183 (Colo. App. 2003) (affirming dismissal of conversion claim where defendant owed no independent duty outside lease agreement). Plaintiffs fail to plead any such duty here. In turn, the FAC fails to state any individual tort claim distinct from underlying contractual obligations and, as such, Plaintiffs cannot escape the limitations of the economic loss rule. *AZCO Const., Inc.*, 10 P.3d at 1264.

### C. Plaintiffs Fail to Allege Actions by Russell Constituting Conversion or Civil Theft.

Plaintiffs fail to adequately plead conversion or civil theft. Conversion is "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other full value of the chattel." *Maryland Cas. Co. v. Messina*, 874 P.2d 1058, 1065 (Colo. 1994) (quotations omitted). For a civil theft claim, on the other hand, "a plaintiff must establish that a defendant (1) knowingly obtained, retained, or exercised control over anything of value of another without authorization; and (2) intentionally or knowingly deprived the other person permanently of the use or benefit of the property." *Million v. Grasse*, 549 P.3d 1043, 1051 (Colo. 2024) (citing C.R.S. § 18–4–401(1)). Generally, when asserting an independent tort against a corporate officer, the moving party must allege the officer "acted unilaterally and separately" from the contractual duties or obligations of the underlying entity. *Ray v. Buscher*, 2025 WL 869322, at *4 (Colo. App. Mar. 20, 2025); *see also supra* § IV.A.

Here, the FAC's description of Russell's involvement in the purported scheme is extraordinarily thin. In lieu of pleading any specific facts relating to Russell's actions or intent to commit conversion or theft, Plaintiffs merely suggest "Russell controlled the Etana Custody business at all relevant times . . . ." (FAC, ¶ 52.) As a result of this purported control, Plaintiffs allege "Defendant[] Russell . . . either participated in or knew of Etana Custody's misappropriation, conversion, theft, and/or failure to return these assets upon demand." (FAC, ¶ 78.) No other allegation in the FAC even references Russell's tortious acts.

"To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations to state a claim to relief that is plausible on its face." *Doe v. Woodard*, 912 F.3d

9

1278, 1299 (10th Cir. 2019) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Critically, "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation" and "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Similarly, allegations must properly distinguish between defendants and "explain what each defendant did to him or her." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Here, Plaintiffs' sparse allegations fail to clear this threshold. Plaintiffs focus on the actions and contractual obligations of Etana, not Russell. Plaintiffs' claim for relief does not satisfy the prerequisite of pleading each element of conversion or civil theft as to Russell. Rather than plead any specific allegations, Plaintiffs merely allege Russell "either participated in or knew of . . . misappropriation, conversion, theft, and/or failure to return these assets." (FAC, ¶ 77.) Absent any other allegations describing the steps Russell took to convert or steal Plaintiffs' property, this plain statement is a legal conclusion. *Twombly*, 550 U.S. at 555. Certainly, Plaintiffs' bare assertion does not describe how Russell acted independently from his obligations as a corporate officer as to impute distinct liability from Etana. *See In re Phillips*, 139 P.3d at 643–44. This omission is even more glaring given that the FAC specifically alleges Luton, not Russell, had control of Etana's finances throughout the relevant time period. (FAC, ¶ 52.) Put simply, Plaintiffs have not presented specific, plausible factual allegations as to how Russell's conduct satisfied the elements of conversion or civil theft.

The Second Cause of Action also must be dismissed because Plaintiffs improperly combine two distinct causes of action: conversion and civil theft. These are legally distinguishable claims under Colorado law with different elements and different affirmative defenses. This is evident from Colorado's Pattern Civil Jury Instructions (2025), which contains separate jury instructions for conversion and civil theft claims. *Compare* Colo. Jury Instr.–Civ. 32.A (Conversion) *with* 32.B (Civil Theft).

### D. Plaintiffs Fail to State a Cause of Action for Breach of Fiduciary Duty Against Russell Where Only Etana Owed a Duty to Kraken.

Plaintiffs' breach of fiduciary duty claim against Russell fails because the alleged fiduciary duty arises entirely from contracts between Etana and Kraken, not Kraken and Russell. A plaintiff must prove the following elements to recover under a theory of breach of fiduciary duty: "(1) The defendant and plaintiff were in a fiduciary relationship; (2) The defendant breached a fiduciary duty owed to the plaintiff; (3) The plaintiff incurred damages or losses; and, (4) The defendant's breach of fiduciary duty was a cause of the plaintiff's damage." *In re S & D Foods, Inc.*, 144 B.R. 121, 162 (Bankr. D. Colo. 1992); *accord Miller v. Byrne*, 916 P.2d 566, 575 (Colo. App. 1995). "The existence of a fiduciary relationship is a prerequisite to the finding of a breach of a fiduciary duty." *MDM Group Assocs, Inc. v. CX Reinsurance Co. Ltd.*, 165 P.3d 882, 888 (Colo. App. 2007).

Importantly, the existence of a contract or a working business relationship does not, in and of itself, generate a fiduciary duty. Generally, "absent the creation of a true fiduciary relationship between two parties to a transaction, representations made by one party to another in conjunction with to a transaction will not, without more, give rise to a confidential relationship." *Nicholson v. Ash*, 800 P.2d 1352, 1355 (Colo. App. 1990). Officers do not have an automatic fiduciary duty to

11

the company's customers. *See generally Hooper v. Yoder*, 737 P.2d 852, 859 (Colo. 1987) (noting duties owed by business owners and partners).

Plaintiffs allege Etana, Russell, and Luton, owed a fiduciary duty to Kraken with respect to funds (indirectly) deposited with Etana. Conspicuously, Plaintiffs allege "*Etana Custody breached its fiduciary duty* by, among other things, failing to properly track, segregate, safeguard custodial funds, and likely misappropriating custodial funds," without a specific allegation as to how Russell breached his fiduciary duty. (FAC, ¶ 82 (emphasis added).) Plaintiffs attempt to cure this glaring omission by alleging conclusively, "[t]hese actions constitute misconduct by all Defendants"[1] (*Id.*) and generally alleging that Russell owed the same fiduciary duties as Etana. This is not so. Russell is not a party to the contracts between Etana and Kraken. And, according to the FAC, Luton—not Russell—"controlled the financial affairs of the Etana Custody Business," "was the individual responsive for said accounts," and was "the corporate officer primarily responsible for Etana Custody's misappropriation of and other misconduct regarding the Kraken Custody Assets." (*Id.* ¶¶ 52, 82, 91.)

The FAC offers no explanation for how Russell individually had a special relationship with Plaintiffs above and beyond the "arm's length" terms negotiated by Kraken and Etana. *Mintz v. Accident & Inj. Med. Specialists, PC*, 284 P.3d 62, 68 (Colo. App. 2010). Unlike a trust fund manager or investment broker, the FAC does not allege Russell personally had a "high degree of control" over Plaintiff's property or that Plaintiff otherwise placed "a high level of trust" in Russell beyond a typical business transaction. *Bailey v. Allstate Ins. Co.*, 844 P.2d 1336, 1339 (Colo. App.

---

[1] This is also an example of improper group pleading, where Plaintiffs fail to allege specific acts by each defendant and conclusively group all defendants. *Nasious*, 492 F.3d at 1163.

1992). The alleged breach flows purely from the duties and obligations of Etana, not Russell acting in his individual capacity. The fiduciary duty described by Plaintiffs, therefore, is one owed by Etana, not Russell. Plaintiffs seemingly concede Russell's lack of fiduciary duty, as they plead aiding and abetting "[i]n the event the Court finds that Russell and Luton did not owe or breach a fiduciary duty to Kraken." (*Id.*, ¶ 88.)

### E. Plaintiffs' Bare Allegations of Aiding and Abetting are Insufficient.

To prove the tort of aiding and abetting a breach of fiduciary duty, a plaintiff must satisfy the following elements: "(1) breach by a fiduciary of a duty owed to a plaintiff, (2) a defendant's knowing participation in the breach, and (3) damages." *Nelson v. Elway*, 971 P.2d 245, 249 (Colo. App. 1998). Plaintiffs cannot make a claim for aiding and abetting against Russell based only on allegations aimed at Etana and vague, conclusory allegations as to Russell's alleged role. *See Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226, 1242 (D. Colo. 2011) (dismissing aiding and abetting claim consisting primarily of allegations directed to dismissed parties and only vague allegations against the remaining defendants, which were insufficient under *Twombly*). Plaintiff offers only bare, conclusory allegations that Russell participated in alleged breaches. *Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*, 2010 WL 1268082, at *3 (D. Colo. Mar. 30, 2010) (finding "bare, conclusory allegation that the third-party defendants 'knowingly participated in the Title Companies breach of their fiduciary duties' " was insufficient as a matter of law).

### F. Plaintiffs Claims are Precluded by the Indemnification Terms of Kraken and Etana's Contract.

Throughout the FAC, Plaintiffs cite various provisions of the agreements between Etana and Kraken. But, critically, Plaintiffs fail to mention those same agreements preclude their claims. Specifically, Section 10.1 provides:

> ETANA CUSTODY shall use all reasonable care in the performance of its duties under this Agreement <u>but shall not be responsible for any loss or damage suffered by the Client as a result of ETANA CUSTODY performing such duties unless the same results from an act of fraud, willful default or gross negligence on the part of ETANA CUSTODY</u> . . . .

(FAC, Ex. 1 [44-1], p. 8 (emphasis added).) The second Custodian Agreement similarly limits Etana's liability unless the loss "results from an act of fraud, willful default or gross negligence on the part of ETANA." (FAC, Ex. 2 [44-2], p. 10.) Plaintiffs do not allege claims of fraud, willful default, or gross negligence against Russell, yet seek damages pursuant to these agreements under other theories. And Russell certainly did not undertake a fiduciary duty where he is not a party to the agreements and where the agreements expressly limit Etana's duties to Kraken.

## V. CONCLUSION

For the foregoing reasons, Defendant Russell respectfully requests Plaintiffs' claims be dismissed based on Plaintiffs' improper attempt to impose tort liability against Russell for Etana's alleged breaches of purely contractual duties and because Plaintiffs fail to offer specific allegations Russell committed any act independent of Etana.

Dated: November 17, 2025.

                                            TAFT STETTINIUS & HOLLISTER LLP

                                            *s/ Mark W. Williams*
                                            Mark W. Williams

        Theodore J. O'Brien
        Robert E. Neel
        675 Fifteenth Street, Suite 2300
        Denver, CO 80202
        Telephone: (303) 297-2900
        Facsimile: (303) 298-0940
        Email: Mark.Williams@taftlaw.com
                tobrien@taftlaw.com
                Bneel@taftlaw.com

**CERTIFICATE OF COMPLIANCE
WITH PRACTICE STANDARD III(A)(1)**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**CONFERRAL UNDER PRACTICE STANDARD III(D)(1)**

Pursuant to D.C.COLO.LCivR 7.1(b), there is no duty to confer regarding a motion filed under Rule 12(b)(6). Judge Domenico's Practice Standard III(D) requires conferral on such motions to discuss where the deficiencies are correctable by amendment. Undersigned counsel conferred with counsel for Plaintiffs regarding the relief requested herein. Plaintiffs oppose the relief requested.

**CERTIFICATE OF SERVICE**

       I hereby certify that on November 17, 2025, I electronically filed the foregoing Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Complaint with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the following email addresses:

| | |
|---|---|
| Renee M. Zaytsev, Esq.<br>Brooke A. Alexander, Esq.<br>Boies Schiller Flexner LLP<br>55 Hudson Yards<br>New York, NY 10001<br>Rzaytsev@bsfllp.com<br>Balexander@bsfllp.com | Kenneth F. Rossman , IV, Esq.<br>Womble Bond Dickinson (US) LLP<br>1601 19th Street Suite 1000<br>Denver, CO 80202<br>Ken.Rossman@wbd-Us.Com |

                                                */s/ Laura J. Kostyk*
                                                Laura J. Kostyk, Legal Assistant